## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **KAREEM SMITH,** | : | |
| | : | **Civil No. 3:19-cv-0711** |
| **Plaintiff** | : | |
| | : | **(Judge Mariani)** |
| **v.** | : | |
| | : | |
| **Governor TOM WOLF**, *et al.*, | : | |
| | : | |
| **Defendants** | : | |

## MEMORANDUM

### I.    BACKGROUND

On April 23, 2019, Plaintiff Kareem Smith ("Plaintiff"), an inmate currently confined in

the State Correctional Institution, Dallas, Pennsylvania ("SCI-Dallas"), filed the above-

captioned action pursuant to 42 U.S.C. § 1983. The named Defendants are Governor Tom

Wolf ("Wolf"), Department of Corrections ("DOC") Secretary John Wetzel ("Wetzel"), DOC

Chief Grievance Officer Varner ("Varner") and SCI-Dallas mailroom supervisor Giselle Malet

("Malet"). (Doc. 1.)  Plaintiff challenge the DOC's use of the Smart Communications mail

system, claiming that it violates his First and Fourteenth Amendment rights under the

Constitution. (*Id.*)  For relief, Plaintiff seeks compensatory and punitive damages, as well as

declaratory and injunctive relief.  (*Id.*)

On February 14, 2020, Defendants filed a motion to dismiss Plaintiff's complaint

(Doc. 17) and on February 28, 2020, filed a brief in support of their motion.  (Doc. 18).  By

Order dated June 8, 2020, this Court granted Plaintiff until June 22, 2020, to file a brief in

opposition to Defendants' pending motion.  (Doc. 19.)  The Order forewarned Plaintiff that

failure to file a brief in opposition would result in the Defendants' motion being granted as

unopposed. (*Id*.)  To date, Plaintiff has neither filed a brief in opposition, nor requested an

enlargement of time within which to do so.  Accordingly, for the reasons set forth below,

Defendants' motion will be granted as unopposed.

## II.    **ALLEGATIONS IN THE COMPLAINT**

Plaintiff alleges that on September 26, 2018, he was 'called by C.O. Fitch to pick up

his incoming mail." (Doc. 1).  He states that "when the Plaintiff went to view the incoming

mail, he noticed the copies of the pictures that was sent to him by his family, were the wrong

pictures, and they were in black and white instead of color."  (*Id.*)  The Plaintiff asked C.O.

Fitch "what happened to the pictures the Plaintiff's family sent to him [and] C.O. Fitch replied

'According to the memo by John E. Wetzel, Secretary of the Pennsylvania Department of

Corrections, which came out on September 6, 2018, this is the new mail policy, you will not

receive your original photos from your family, those were sent to Smart Communications, a

third party in Florida, once your pictures arrive there, they will be checked for contraband,

scanned, copied and stored in their computer database for seven (7) years, then after

fifteen (15) days, they will be destroyed'." (*Id.*)

On October 3, 2018, Plaintiff filed Grievance No. 763979, challenging the mail policy,

claiming a "complete violation of [his] First (1st) Amendment right to censorship" and that "all

prison officials at SCI-Dallas, all DOC employees, John E. Wetzel, Governor Tom Wolf, all

knew this is a complete violation of [Plaintiff's] First (1st) Amendment Rights, there is no

penological interest from all parties, that they're allowed to coy, store, destroy, [Plaintiff']

personal photos, nor is this mail regulation listed in DOC Policy, DC-ADM 803." (Doc. 1 at

9, Grievance No. 763979).

On October 25, 2018, Plaintiff's grievance was denied as follows:

I have been assigned as Grievance Officer to address your issues regarding
processing your mail.

Your mail is being processed in accordance with DOC Inmate Mail and
Incoming Publications policy, DC-ADM 803. On August 29, 2018, the
Secretary of Corrections ordered an immediate lockdown of all State
Correctional Facilities. This action was a first step to curbing the introduction
of contraband into the facilities to ensure the safety of all inmates, staff,
visitors, and volunteers entering our facilities. Sometimes during the
implementation of changes, there are slight inconveniences; however, there
were no apparent or intended rights violations. If the PA Department of
Corrections including John E. Wetzel deems a State of Emergency to ensure
the safety of the Department as a whole, then they do not need your
permission to act as an agent on your behalf. When this office became
aware, you received the wrong photos a ticket with the tracking of 80053 was
put in to Smart Communications informing them the wrong photos were in the
envelope. Photos were printed in black and white until we received our color
copier to avoid delays of making the inmate population wait for their mail.
Now that the color copier is in place we have already began to the process of
reprinting all photos and cards that were printed in black and white, however,
we will not reprint the photos you are referring to in this grievance since they
are not your photos as stated.

Based on the above information, your grievance is upheld in party only upheld
that the mailroom is waiting for Smart Communications correct the issue and
close the ticket out for the photos that you received in error. This grievance is
denied in part due to the fact that policy was not violated and your rights were
not violated as you allege, therefore, no financial relief will be awarded.

- 3 -

(Doc. 1-1 at 8, Initial Review Response).

On October 26, 2018, Plaintiff filed an appeal of Grievance No. 763979 to the Facility

Manager, (Doc. 1-1 at 9, appeal), which was denied on November 29, 2018, as follows:

> I have reviewed the above-noted grievance, the Grievance Coordinator's
> response and your subsequent appeal of said grievance. My decision is as
> follow:
>
> Ms. Malet was assigned as grievance officer and has appropriately addressed
> all of your grievance concerns regarding the handling of mail.
>
> Your mail is being processed in accordance with DC-ADM 803 Inmate Mail
> and Incoming Publications policy.  SCI-Dallas is not responsible for your
> attorney failing to follow the guidelines of placing the attorney control number
> on the correspondence.
>
> I find your grievance to be without merit; therefore, I uphold the initial
> response to uphold in part/deny in part.  Your request for relief is denied.

(Doc. 1-1 at 11, Facility Manager's Appeal Response).

On December 5, 2018, Plaintiff filed an appeal of Grievance No. 763979 to final

review before the Secretary's Office of Inmate Grievances and Appeals.  (Doc. 1-1 at 12,

appeal).

On December 26, 2018, the Chief Grievance Officer upheld Plaintiff's grievance,

finding the following:

> You claim in your grievance that on 9/26/18, you received black and white
> photos that did not belong to you, that you never agreed to have your family
> send pictures to Florida, and you didn't give the DOC permission to store your
> family's addresses for seven years in its database.  You seek $10,000 from
> each of the prison officials of the PA DOC, DOC Secretary Wetzel and Gov.
> Wolf for violating your rights.  An investigation was conducted into your

- 4 -

allegations.  The record reflects that Mailroom Supervisor Malet adequately
addressed your issue.  The record reflects that the new mail procedure was
directed and approved by Secretary Wetzel on 8/29/18.  The record reflects
that as soon as staff were made aware of you receiving the wrong pictures, a
ticket was placed with Smart Communications to fix the error. The record
reflects that because staff did not have access to colored printers, photos
were printed in black and white so there was not a delay in you receiving your
photos.  The record reflects that mailroom staff are reprinting the photos that
you received in black and white, except for the ones that you admitted were
not yours.  Although this new process is not what you are used to, there are
no policy violations.  Staff are doing the best they can to ensure that you
continue to get your mail.  Your grievance is upheld in part because you did
receive the wrong photos but denied in your requested relief because you
have not been harmed in any way.

(Doc. 1-1 at 14, Final Appeal Decision).

On October 10, 2018, Plaintiff filed Grievance No. 765597, arguing that the

Defendants have "a custom, pattern, practice, and for the second time, copying, destroying

Plaintiff's incoming mail without any penological interest and storing Plaintiff's family

information in a computer database with Smart Communications for a period of seven (7)

years, without the permission from the Plaintiff, or his family members.  (Doc. 1-1, Official

Inmate Grievance).

By response dated October 30, 2018, Plaintiff's grievance was denied, in part, as

follows:

I have been assigned as Grievance Officer to address your issues regarding
processing of your mail.

Your mail is being processed in accordance with DOC Inmate Mail and
Incoming Publications policy, DC-ADM 803.  On August 29, 2018, the
Secretary of Corrections ordered an immediate lockdown of all State

Correctional Facilities.  This action was a first step to curbing the introduction
of contraband into the facilities to ensure the safety of all inmates, staff,
visitors, and volunteers entering our facilities.  Sometimes during the
implementation of changes, there are slight inconveniences; however, there
were no apparent or intended rights violations.  If the PA Department of
Corrections including John E. Wetzel deems a State of Emergency to ensure
the safety of the Department as a whole, then they do not need your
permission to act as an agent on your behalf.  Photos were printed in black
and white until we received our color copier to avoid delays of making the
inmate population wait for their mail.  Now that the color copier is in place we
have already began the process of reprinting all photos and cards that were
printed in black and white.  The Department of Corrections denies storing
your family's personal information in a database for seven (7) years as you
allege.

Based on the above information, your grievance is upheld in part only upheld
that the mailroom is in the process of printing/reprinting your photos in color.
Denied in part because there are no policy violations as you allege.  No
financial relief will be awarded.

(Doc. 1-1 at 19, Initial Review Response).

On October 31, 2018, Plaintiff filed an appeal of Grievance No. 765597 to the Facility

Manager, (Doc. 1-1 at 20, appeal), who, on November 29, 2018, upheld the initial response,

as follows:

I have reviewed the above-noted grievance, the Grievance Officer's response
and your subsequent appeal of said grievance.  My decision is as follows:

Ms. Malet was assigned as grievance officer and has appropriately addressed
all of your grievance concerns regarding the handling of your mail at SCI-
Dallas.

Your mail is being processed in accordance with DOC Inmate Mail and
Incoming Publications policy, DC-ADM 803 which states all incoming, non-
privileged inmate correspondence must be addressed and sent to the
Department's contracted central incoming inmate mail processing center.  In

addition, it states, the contracted mail processing center shall retain the following records related to the processing of inmate incoming mail in accordance with the following periods: scanned electronic copies of the incoming correspondence will be securely maintained for 45 days and then securely destroyed unless otherwise directed by the Department.

 I find your grievance to be unfounded, therefore, I uphold the initial response. Your requested monetary relief is denied.

(Doc. 1-1 at 22, Facility Manager's Appeal Response).

Plaintiff filed an appeal to final review on December 5, 2018.  (Doc. 1-1 at 23, Inmate Appeal to Final Review).  On December 26, 2018, Plaintiff's appeal was denied, based on the following:

> You claim in your grievance that on 10/10/18, you received black and white photos, that you never agreed to have your family send pictures to Florida, and you didn't give the DOC permission to store your family's addresses for seven years in its database.  You seek $10,000 from each of the prison officials of the PA DOC, DOC Secretary Wetzel and Gov. Wolf for violating your rights.  An investigation was conducted into your allegations.  The record reflects that Mailroom Supervisor Malet adequately addressed your issue. The record reflects that the new mail procedure was directed and approved by Secretary Wetzel on 8/29/18.  The record reflects that because staff did not have access to colored printers, photos were printed in black and white so there was not a delay in your receiving your photos. The record reflects that mailroom staff are reprinting the photos that you received in black and white. Although this new process is not what you are used to, there are no policy violations.  Staff are doing the best they can to ensure that you continue to get your mail.  You have failed to provide any evidence that you have been harmed in any way.  Therefore, your requested relief is denied.

(Doc. 1-1 at 25, Final Appeal Decision).

On April 23, 2019, Plaintiff filed the instant action, challenging the alleged "ongoing practice, pattern, custom, policy, of the named Defendants, destroying, coping (sic), storing

the Plaintiff's incoming non-privileged mail, along with the Plaintiff's family members'

information being stored in a computer database of a third party, [Smart Communications],

which violates the Plaintiff's First [1st] Amendment Rights against Free Speech, Censorship

and Plaintiff's Fourteenth [14th] Amendment Right against Due Process." (Doc. 1 at 28).

For relief, Plaintiff seeks compensatory and punitive damages, as well as declaratory and

injunctive relief. (*Id.*).

### III.   **STANDARD**

#### A.   **Motion to Dismiss Pursuant to Federal Rule of Civil Procedure 12(b)(6)**

Defendants move for the dismissal of Plaintiff's complaint pursuant to Rule 12(b)(6)

of the Federal Rules of Civil Procedure for failure to state a claim. (Doc. 18 at 3-4.) Federal

notice and pleading rules require the complaint to provide the defendant notice of the claim

and the grounds upon which it rests. *See Phillips v. Cty. of Allegheny*, 515 F.3d 224, 232

(3d Cir. 2008). The plaintiff must present facts that, accepted as true, demonstrate a

plausible right to relief. *See* Fed. R. Civ. P. 8(a). Although Federal Rule of Civil Procedure

8(a)(2) requires "only a short and plain statement of the claim showing that the pleader is

entitled to relief," a complaint may nevertheless be dismissed under Federal Rule of Civil

Procedure 12(b)(6) for its "failure to state a claim upon which relief can be

granted." *See* Fed. R. Civ. P. 12(b)(6).

When ruling on a motion to dismiss under Rule 12(b)(6), the court accepts as true all

factual allegations in the complaint and all reasonable inferences that can be drawn from

them, viewed in the light most favorable to the plaintiff. *See Ashcroft v. Iqbal*, 556 U.S. 662,

679 (2009); *In re Ins. Brokerage Antitrust Litig.,* 618 F.3d 300, 314 (3d Cir. 2010). To

prevent dismissal, all civil complaints must set out "sufficient factual matter" to show that

their claims are facially plausible. *See Iqbal,* 556 U.S. at 678; *Fowler v. UPMC Shadyside*,

578 F.3d 203, 210 (3d Cir. 2009). The plausibility standard requires more than a mere

possibility that the defendant is liable for the alleged misconduct: "[W]here the well-pleaded

facts do not permit the court to infer more than the mere possibility of misconduct, the

complaint has alleged – but it has not 'show[n]' – 'that the pleader is entitled to relief.'" *See*

*Iqbal*, 556 U.S. at 679 (citing Fed. R. Civ. P. 8(a)(2)).

Accordingly, the Third Circuit has identified the following steps that a district court

must take when reviewing a 12(b)(6) motion: (1) identify the elements that a plaintiff must

plead to state a claim; (2) identify any conclusory allegations contained in the complaint that

are "not entitled" to the assumption of truth; and (3) determine whether any "well-pleaded

factual allegations" contained in the complaint "plausibly give rise to an entitlement to relief."

*See Santiago v. Warminster Twp.,* 629 F.3d 121, 130 (3d Cir. 2010) (internal citations and

quotation marks omitted). The Third Circuit has specified that in ruling on a Rule 12(b)(6)

motion to dismiss for failure to state a claim, "a court must consider only the complaint,

exhibits attached to the complaint, matters of public record, as well as undisputedly

authentic documents if the complainant's claims are based upon these documents." *See*

*Mayer v. Belichick,* 605 F.3d 223, 230 (3d Cir. 2010) (citing *Pension Benefit Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993)).

In the context of *pro se* prisoner litigation, the court must be mindful that a document filed *pro se* is "to be liberally construed." *See Estelle v. Gamble*, 429 U.S. 97, 106 (1976). A *pro se* complaint, "however inartfully pleaded," must be held to "less stringent standards than formal pleadings drafted by lawyers" and can be dismissed for failure to state a claim only if it appears beyond a doubt that the plaintiff can prove no set of facts in support of his claim that would entitle him to relief. *See Haines v. Kerner,* 404 U.S. 519, 520-21 (1972).

## B.     Section 1983 Standard

Section 1983 is the vehicle by which private citizens may seek redress for violations of federal constitutional rights committed by state officials. *See* 42 U.S.C. § 1983.  The statute states, in pertinent part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

*Id.* "Section 1983 is not a source of substantive rights," but is merely a means through which "to vindicate violations of federal law committed by state actors." *See Pappas v. City of Lebanon,* 331 F. Supp. 2d 311, 315 (M.D. Pa. 2004) (quoting *Gonzaga Univ. v. Doe,* 536 U.S. 273, 284-85 (2002)).  To state a cause of action under Section 1983, a plaintiff must

allege that: (1) the conduct complained of was committed by persons acting under color of

state law; and (2) the conduct violated a right, privilege, or immunity secured by the

Constitution or laws of the United States.  *See Harvey v. Plains Twp. Police Dep't*, 421 F.3d

185, 189 (3d Cir. 2005) (quoting *West v. Atkins*, 487 U.S. 42, 48 (1988)).

## IV.   DISCUSSION

In their motion to dismiss, Defendants argue that (1) the court should dismiss Smith's

First Amendment freedom of expression claim because processing mail by a third-party

does not restrict his freedom of expression; (2) they are entitled to qualified immunity on

Smith's First Amendment confidentiality claim because it was not clearly established that

the moving defendants could not contract with a third-party to process incoming non-

privileged inmate mail; and (3) the court should dismiss any possible Fourteenth

Amendment claim (relating to any loss of property) because Pennsylvania law provides

Smith with an adequate state remedy. (Doc. 18 at 2-3.)  The court will address each

argument in turn.

### A.   Smith's First Amendment Claim

Smith alleges that the DOC's mail policy in which it uses Smart Communications to

process, copy/scan, occasionally destroy, and transmit prisoner mail violates his First

Amendment Freedom of Expression and right to confidentiality.  (Doc. 1.)

- 11 -

"In a prison context, an inmate does not retain those First Amendment rights that are inconsistent with his status as a prisoner or with the legitimate penological objectives of the corrections system." *Jones v. N.C. Prisoners' Labor Union*, 433 U.S. 119, 129 (1977) (citation and internal quotation marks omitted). Prisoners have a First Amendment right to use the mail. *See Jones v. Brown*, 461 F.3d 353, 358 (3d Cir. 2006) (explaining that state prisoners do not lose First Amendment right to use mail simply because they are incarcerated); *see also Bieregu v. Reno*, 59 F.3d 1445, 1551 (3d Cir. 1995) ("Clearly then, prisoners do not forfeit their First Amendment rights to use of the mails."), overruled on other grounds by *Lewis v. Casey*, 518 U.S. 343 (1996).

To determine whether the Departments' mail policy violates Smith's First Amendment rights, the Court must analyze whether the mail policy "is reasonably related to legitimate penological interests."[1] *Turner v. Safley*, 482 U.S. 78, 89 (1987). This analysis "presupposes 'that the plaintiff inmate has demonstrated that a constitutionally protected

---

[1]     The Court expressly rejected an "inflexible strict scrutiny analysis" for these types of prison regulations because it would seriously hamper [prison officials'] ability to anticipate security problems and to adopt innovative solutions to the intractable problems of prison administration. The rule would also distort the decision-making process, for every administrative judgment would be subject to the possibility that some court somewhere would conclude that it had a less restrictive way of solving the problem at hand. Courts inevitably would become the primary arbiters of what constitutes the best solution to every administrative problem, thereby unnecessarily perpetuat[ing] the involvement of the federal courts in affairs of prison administration. *Turner*, 482 U.S. at 89 (citation and internal quotation marks omitted).

interest is at stake'."[2]  *Jones*, 461 F.3d at 358 (quoting *DeHart v. Horn*, 227 F.3d 47, 51 (3d

Cir. 2000) (en banc)).  Under *Turner*, the court examines four factors "in determining the

reasonableness of the regulation at issue": (1) whether there is "a valid, rational connection

between the prison regulation and the legitimate governmental interest put forward to justify

it[;]" (2) "whether there are alternative means of exercising the right that remain open to

prison inmates [;]" (3) "the impact accommodation of the asserted constitutional right will

have on guards and other inmates, and on the allocation of prison resources generally [;]"

and (4) "the absence of ready alternatives." 482 U.S. at 90–91.

Concerning the first factor here, the court recognizes that "preventing the

introduction of contraband into the prison is ... a legitimate penological interest." *Guyer v.*

*Beard*, 907 F.2d 1424, 1428–29 (3d Cir. 1990) (citation omitted).  Nonetheless, " 'a

regulation cannot be sustained where the logical connection between the regulation and the

---

[2]      With regard to this constitutionally protected interest, the court acknowledges that:
>       [a] state pattern and practice, or, as is the case here, explicit policy, of
>       opening legal mail outside the presence of the addressee inmate
>       interferes with protected communications, strips those protected
>       communications of their confidentiality, and accordingly impinges
>       upon the inmate's right to freedom of speech. The practice deprives the
>       expression of confidentiality and chills the inmates' protected
>       expression, regardless of the state's good-faith protestations that it does
>       not, and will not, read the content of the communications. This is so
>       because the only way to ensure that mail is not read when opened ... is
>       to require that it be done in the presence of the inmate to whom it is
>       addressed. [*Bieregu*, 59 F.3d at 1456 (quoting *Wolff v. McDonnell*, 418
>       U.S. 539, 575 (1974)), overruled on other grounds by *Lewis v. Casey*,
>       518 U.S. 343 (1996) ].

*Jones*, 461 F.3d at 359.

- 13 -

asserted goal is so remote as to render the policy arbitrary or irrational' or to demonstrate

that it 'represents an exaggerated response to [the asserted] objectives'." *Jones*, 461 F.3d

at 360 (quoting *Turner*, 482 U.S. at 89-90). "Thus, 'a rational nexus between a regulation

and a legitimate penological interest is essential to its validity'." *Id.* (quoting *DeHart*, 227

F.3d at 53).

The moving defendants acknowledge that while Smith "bears the ultimate burden of

showing that the Department's new mail policy is unconstitutional, it is the Department

Officials' burden to demonstrate that a rational connection exists between the policy and a

legitimate penological interest." (Doc. 18 at 7, citing *Monroe*, 536 F.3d at 207). Also, while

the court must "accord substantial deference to their professional judgment, the defendant

administrators' evidence must amount to more than a conclusory assertion." *Monroe*, 536

F.3d at 207 (internal citation and quotation marks omitted).

Moreover,

[w]hile the connection [between the prohibition/regulation and the interests to
be advanced] may be a matter of common sense in certain instances, such
that a ruling on this issue based only on the pleadings may be appropriate,
there may be situations in which the connection is not so apparent and does
require factual development. Whether the requisite connection may be found
solely on the basis of "common sense" will depend on the nature of the right,
the nature of the interest asserted, the nature of the prohibition, and the
obviousness of its connection to the proffered interest. The showing required
will vary depending on how close the court perceives the connection to be.

*Wolf v. Ashcroft*, 297 F.3d 305, 308–09 (3d Cir. 2002) (footnote omitted).

- 14 -

Defendants contend that the Department and other states have observed instances where drugs enter prisons by being soaked into the mail sent to inmates.  (Doc. 18 at 8). Thus, they argue that there is a "valid, rational connection between prohibiting inmates form accessing original mail and stopping unlawful drugs from entering prison." (*Id*.)  Plaintiff does not refute this.

This Court concludes that the Department has a legitimate governmental interest in preventing contraband or narcotics from entering the state prisons.  Nonetheless, the particular issue in this case is that the Department is preventing inmates from possessing the original document and Smart Communications (or prison officials) are destroying those original documents after a certain period has passed.  While the goal to prevent drugs from entering the prison is understandable, this goal is not necessarily related to an original piece of mail.  Now, Defendants' contention goes beyond that, because they point out that the drastic change in the mail policy was required because the drugs were actually soaked into the mail coming to the inmates. Thus, allowing inmates or prison employees to physically touch the mail was actually exposing them to the drugs.

Defendants support these statements through three press releases, two issued by the Department (on August 29, 2018 and October 19, 2018) and one by Governor Tom Wolf (on September 5, 2018). (*See* Doc. 18-1, 18-3, 18-4).  The court takes judicial notice of these documents as matters of public record.  *See, e.g., JNL Mgmt., LLC v. Hackensack Univ. Med. Ctr.*, Civ. A. No. 18-5221 (ES) (SCM), 2019 WL 1951123, at \*4 (D.N.J. May 2,

2019) ("[T]he Department of Justice's Press Release is also a matter of public record because it is a record of a government agency." (citing *Schmidt v. Skolas*, 770 F.3d 241, 250 (3d Cir. 2014)). The August 29, 2018 and September 5, 2018 press releases provide information about the Department's staff members becoming sickened by unknown substances over a period of a few weeks. (*See* Doc. 18-1, 18-3). The October 19, 2018 press release provides a "progress update" on the "new protocols and policies announced in September to protect staff, visitors and inmates at Pennsylvania's 25 state correctional facilities after an unprecedented number of inmate and staff exposures to unknown substances." (Doc. 18-4). In this document, the Department also importantly indicates that "[t]hose who seek to get drugs into prisons have become more creative and the new drugs, K2 or synthetic cannabinoids, are odorless, colorless and more potent than seen before, and make up 40 percent of drugs introduced into the state prison system." *Id*.

The Court finds that the instant situation is one in which common sense shows a connection between the Department seeking to stop the entry of drugs into the prisons and using a system by which the original documents (which could have drugs on them) were sent for processing to another location other than the prison. As such, there is valid, rational connection between the Department's mail policy and the legitimate governmental interest put forward by the Defendants.

Regarding the second factor, the Court agrees with Defendants that Smith has an alternative means to receive his non-privileged mail. Per the policy, Smith receives a copy

of the original mailing without its content being censored.  (*See* Doc. 18-2, DC-ADM 803 §

1B.5 ("Facility staff will print and deliver paper copies of the incoming inmate

correspondence to the inmate recipients.")).  Additionally, Plaintiff can communicate via

electronic mail with family members if he possesses a tablet.  (Doc. 18 at 9).  While the

court appreciates Smith's desire to have an original copy of a letter, photo, or card, and the

Court is not downplaying the significance of the sentiment and attachment to those original

documents, nevertheless, "[a]lternatives ... need not be ideal ...; they need only be

available." *Overton v. Bazzetta*, 539 U.S. 126, 135 (2003).

 Additionally, there is nothing about the current mail policy that prevents Smith from

meaningfully corresponding with whomever he chooses, including his family.  Pursuant to

the current mail policy, Smith's family can meaningfully correspond with him if they choose

to do so.

 As for the third factor, "[w]hen accommodation of an asserted right will have a

significant 'ripple effect' on fellow inmates or on prison staff, courts should be particularly

deferential to the informed discretion of corrections officials."  *Turner*, 482 U.S. at 90.  Here,

providing Smith what he wants, namely a return to the policy that existed prior to the

Department contracting with Smart Communication, puts the Department (and its 25

prisons) back to where it was prior to the modified mail policy.  As demonstrated by the

October 19, 2018 press release, the effects of the changes (which included changes

beyond simply changing the mail policy) on the inmate population and the staff were

significant. (*See* Doc. 18-4 at 2, indicating that, inter alia, since policy changed (1) "[s]taff sent to the emergency room for drug exposure dropped from 48 visits in August to 8 in September[,]" (2) "[d]rug finds dropped by 46 percent to the lowest level in more than a year[,]" (3) "[p]ositive drug tests from random inmate drug testing dropped in half to the lowest level in more than a year," (4) "[b]oth inmate-on-inmate and inmate-on-staff assaults declined[,]" and (5) "[t]he number of inmate misconducts written for drug-related activity were cut in half"). It is reasonable to conclude based on this information that returning to the prior policy could harm the inmates and staff members at the 25 state prisons.

Regarding the final factor, Smith does not offer any other alternatives to the Department's policy in his complaint. As indicated earlier, Smith's only alternative appears to be going back to the way staff members processed mail before the new policy took effect. As the moving Defendants point out in their brief, "there are no ready alternatives that accommodate the inmate's rights at a *de minimis* cost to the Department ..., nor does Smith propose any." (Doc. 18 at 11). Consequently, there is nothing in the record to dispute that "[t]he new inmate mail policy is the most efficient and cost-effective means to deal with this new and dangerous healthy and safety problem facing the state prison system." (*Id.*) Accordingly, Smith has not stated a plausible claim under the First Amendment regarding the Departments' mail policy.

Even if Smith had alleged a plausible claim for a constitutional violation, the court agrees with the Defendants that they would be entitled to qualified immunity. State officials

have qualified immunity from claims for monetary relief if their conduct "does not violate a clearly established statutory or constitutional right of which a reasonable person would have known." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009).   "The doctrine is designed to 'give[] government officials breathing room to make reasonable but mistaken judgments by protect[ing] all but the plainly incompetent or those who knowingly violate the law'." *Bryan v. United States of Am.*, 913 F.3d 356, 362 (3d Cir. 2019) (quoting *City and Cty. of San Francisco, Cal. v. Sheehan*, 135 S. Ct. 1765, 1774 (2015)); *see also Pearson*, 555 U.S. at 231 ("The protection of qualified immunity applies regardless of whether the government official's error is a mistake of law, a mistake of fact, or a mistake based on mixed questions of law and fact." (citation and internal quotation marks omitted)). To determine whether an officer's conduct is entitled to qualified immunity, courts ask two questions, "[o]ne is whether the defendant's conduct violated a statutory or constitutional right.  The other is whether the right at issue was clearly established when the conduct took place. [Courts] have discretion to address either inquiry first." *Sauers v. Borough of Nesquehoning*, 905 F.3d 711, 716 (3d Cir. 2018).  During this analysis, the Court views the facts as most favorable to the non-moving party and "courts must take care not to define a case's 'context' in a manner that imports genuinely disputed factual propositions."

As to the question of whether the right at issue was clearly established when the Defendants' conduct took place, courts should not "define clearly established law at a high level of generality." *Id*. at 716.  Courts are not required to identify "a case directly on point

- 19 -

for a right to be clearly established, [however,] existing precedent must have placed the statutory or constitutional question beyond debate." *White v. Pauly*, 137 S. Ct. 548, 551 (2017) (citation and internal quotation marks omitted). Lastly, as an affirmative defense, "the burden of establishing qualified immunity falls to the official claiming it as a defense." *Burns v. Pa. Dep't of Corr.*, 642 F.3d 163, 176 (3d Cir. 2011) (citing *Harlow v. Fitzgerald*, 457 U.S. 800, 819 (1982)).

Here, the Court agrees with the Defendants that they did not violate clearly established law when the Department contracted with Smart Communications to process and copy incoming non-privileged mail. Smith does not identify, and this Court cannot locate, any precedent that would have placed the moving Defendants on notice that their conduct was constitutionally prohibited.[3] Thus, Defendants are entitled to qualified immunity for Smith's First Amendment claims under section 1983.

## B. Smith's Fourteenth Amendment Claim

To the extent that Smith is asserting a due process claim under the Fourteenth Amendment, he is entitled to due process of law before the government can deprive him of his "life, liberty, or property." U.S. Const. amend. XIV, § 1, cl. 3. Nonetheless, an individual

---

[3]     Limited precedent, in fact, seems to indicate the opposite. In Virginia, the District Court upheld copying incoming mail, and in Indiana the District Court struck down the policy requiring incoming mail to be on lined paper and suggested that copying mail was an obvious alternative. (Doc. 18-9, *Bratcher v. Clarke*, 1:17-cv-474 2018 WL 4658685 (E.D. Va. September 26, 2018)); (Doc. 18-8, *Sweeny v. Commissioner, Indiana DOC*, 2018 WL 4566710 (S.D. Ind. September 24, 2018)).

may not assert a claim under section 1983 for even an intentional deprivation of the

individual's property by a state employee, "if a meaningful post deprivation remedy for the

loss is available." *Hudson v. Palmer*, 468 U.S. 517, 533 (1984).  Smith cannot assert a

plausible due process claim here because Pennsylvania law provides him with an adequate

state remedy.  *See Shakur v. Coelho*, 421 F. App'x 132, 135 (3d Cir. 2011) (*per curiam*)

(explaining that Pennsylvania Tort Claims Act, 42 Pa. C.S. §§ 8541-8546, provides an

adequate remedy for willful deprivation of property claim).[4]  In addition, "[t]he Pennsylvania

Department of Corrections ... grievance procedure provides an adequate post-deprivation

remedy," and this procedure "forecloses [Smith's] due process claim." *Cruz v. SCI-SMR

Dietary Servs.*, 566 F. App'x 158, 160 (3d Cir. 2014) (*per curiam*) (citing *Tillman v. Lebanon

Cty. Corr. Fac.*, 221 F.3d 410, 422 (3d Cir. 2000)).

## V.   **CONCLUSION**

For the foregoing reasons, Smith has not stated a plausible claim against any of the

named Defendants, and the Defendants have qualified immunity with respect to the

Plaintiff's  First Amendment claims.  The Court will grant Defendants' motion to dismiss.

An appropriate Order follows.

Date:  August    , 2020

Robert D. Mariani
United States District Judge

---

[4]   Additionally, Plaintiff presents no evidence that any Defendants were personally involved in any alleged  property destruction. *See Rode v. Dellarciprete*, 845  F.2d 1195, 1207 (3d Cir. 1988).